# Adler *et al*. v. Van Kirk Land & Construction Co.

## *Bill of Review.*

1. *Bill of review upon newly discovered evidence; what averments necessary to maintain it.*—In order to maintain a bill of review upon newly discovered evidence, the matter must not only be ascertained and discovered after the decree was rendered, but it must also affirmatively appear, by appropriate averments and by proof, that the party complaining could not, by the use of reasonable diligence, have ascertained or discovered it prior to the rendition of the decree.

2. *Same; same; case at bar.*—A bill by a mortgagor seeking to review a decree foreclosing his mortgage, upon the ground of newly discovered evidence, can not be maintained when it is shown by the averments of the bill that the decree sought to be reviewed was rendered a year before the filing of the bill, and the alleged newly discovered evidence shows that by false and fraudulent representations made by the mortgagee in a settlement between the parties eight months before the rendition of the consent decree, the complainant believing them to be true was induced to enter into an agreement upon which the decree was based, and the falsity of such representations were not known until just prior to the filing of the bill, but the bill wholly fails to show that any effort was made by the complainant to ascertain the truthfulness of the representations until just prior to the filing of the bill of review, or that such efforts, if made, were unavailing, and it appears from the averments of the bill that the alleged newly discovered evidence could have been as readily ascertained at the time of the settlement or at any time prior to the decree, as thereafter.

3. *Same; relation between mortgagor and mortgagee not confidential; laches.*—The relation between a mortgagor and mortgagee is not a relation of trust and confidence, but is simply that of debtor and creditor, and will not, of itself, relieve the mortgagor, in a settlement with the mortgagee, from his laches in failing to exercise proper diligence to discover facts, which are subsequently relied on by him as the basis of a bill of review because of newly discovered evidence.

4. *Equity pleading; validity of decree rendered in vacation by consent.* A decree rendered in vacation by consent of the parties, under the

authority of the statute (Code of 1886, § 3593), and in compliance with Rule 80a of Chancery Practice, has the same validity as if rendered in term time.

5. *Same; effect of consent decree.*—Where the parties to a suit in equity are *sui juris* and occupy no confidential relations to each other, a decree of a court having jurisdiction of the subject matter, rendered by consent of the parties, though without any ascertainment by the court of the truth of the facts averred in the bill, is, in the absence of fraud in its procurement, as binding and conclusive between the parties and their privies as if the suit had been an adversary one, and the decree had been rendered upon controverted issues of fact, and after due consideration thereof by the court.

6. *Same.*—The consent for the rendition of a consent decree operates as a waiver of error in a proceeding precluding a review of the decree upon appeal, and as a general rule, upon a bill of review.

7. *Bill impeaching consent decree for fraud; what necessary to maintain it.*—In order to maintain an original bill or an original bill in the nature of a bill of review seeking to impeach a consent decree for fraud, it must be shown, by appropriate averments and proof, that the fraud charged relates to the procurement of the decree, or of the consent upon which it was based, as distinguished from fraud which vitiates the cause of action, and which should have been interposed as a defense to the suit.

APPEAL from the Chancery Court of Escambia.
Heard before the Hon. JERE N. WILLIAMS.

The facts of the case are sufficiently stated in the opinion.

JOHN P. TILLMAN and JOHN B. KNOX, for appellants. 1. As a bill of review upon newly discovered matter, while the bill avers that the fraud alleged was not discovered until after the decree was entered, it wholly fails to show, by appropriate averments, that by the use of due diligence, the complainant could not have discovered the alleged fraud before the rendition of the decree. This failure is fatal to the bill.—Story's Eq. Plead., § 414; 2 Dan. Ch. Pl. & Pr. (5th ed.), p. 1578; *Dexter v. Arnold*, 5 Mason, 312, 321; *Wiser v. Blackley*, 2 Johns. Ch. 488; *Barrows v. Rhineland*, 3 Johns. Ch. 120; *Bingham v. Dawson*, 3 Jac. & Walk. 243; *Young v. Keighley*, 16 Ves. 348; *Bradshaw v. Garrett*, 1 Port. 56; *Murrell v. Smith*, 51 Ala. 301; *Banks v. Long*, 79 Ala. 319; *Putnam v. Clark*, 36 N. J. Eq. 33; *Traphagen v. Voorhees*, 45 N. J. Eq. 41; *Davis Sew. Machine Co. v.*

*Dunbar*, 9 S. E. Rep. (W. Va.) 240 ; 2 Beach's Mod. Eq. Pr., § 862. This rule of diligence is the same as is applied in cases in which the aid of a court of equity is invoked to relieve against fraud in judgments at law or decrees of courts of probate ; and its application to such cases has been the subject of numerous adjudications by this court.—*Waldrom v. Waldrom*, 76 Ala. 289 ; *Waring v. Lewis*, 53 Ala. 624. In *Bowden v. Perdue*, 59 Ala. 413, BRICKELL, C. J., quoting from *Watts v. Gayle*, 20 Ala. 825, says : "The conscience of the court may be satisfied that injustice has been done—that the judgment or decree has not declared and enforced, but has defeated, the right—the unvarying condition precedent to its interference is, that it must clearly appear the wrong occurred without fault or negligence on the part of the party complaining. Quieting litigation, silencing controversies, in the policy of that court, is of more importance than that justice may be done in every case. The same rule has been applied in the following, among other cases : *National Fertilizer Co. v. Hinson*, 103 Ala. 532 ; *Roebling's Sons Co. v. Stevens Co.*, 93 Ala. 39 ; *Collier v. Falk*, 66 Ala. 223 ; *Paulding v. Creagh*, 54 Ala. 654 ; *Otis v. Dargan*, 53 Ala. 178 ; *Kirby v. Kirby*, 70 Ala. 370 ; *Headley v. Bell*, 84 Ala. 346.

2. Construing the bill most strongly against the complainant, Adler must be taken to be a purchaser of the mortgage foreclosed and of the debts secured thereby, for value, and, in the absence of averment impeaching his good faith, or charging him with notice, without notice of the alleged fraud. In such case, the decree will not be reviewed upon newly discovered evidence, even if the complainant were entitled to the relief against original mortgagees, had the decree been rendered on their bill and in their favor.—Story's Eq. Plead., § 417 ; *P. & M. Bank v. Dundas*, 10 Ala. 669 ; *Dexter v. Arnold*, 5 Mason, 315 ; 2 Pom. Eq., § 918.

3. It is a general rule that against a consent decree a bill of review will not lie.—*Thompson v. Maxwell*, 95 U. S., 397 ; *Webb v. Webb*, 3 Swanst. 658 ; 2 Dan. Ch. Pl. & Pr. (5th ed.), p. 1576.

4. Treating the bill as an original bill, or, as it is sometimes called, an original bill in the nature of a bill of review, seeking to impeach the consent decree for fraud, it is without equity, because the fraud charged

does not relate to the procurement of the decree, or of the consent upon which it was based, but to the debt itself for the collection of which the decree was rendered; and is alleged to have been practiced many months before the decree was entered; and, so far as disclosed by the bill, before such a decree was in the contemplation of the parties.—1 Story's Eq. Pl., § 426; 2 Story's Eq. Jur., § 1575; 2 Freeman on Judgts.,§489; *Humphreys v. Burleson*, 72 Ala. 6; *Watts v. Frazer*, 80 Ala. 188; *Noble v. Moses*, 74 Ala. 604; *Cromelin v. McCauley*, 67 Ala. 547; Kerr on Fraud & Mis., 353; *Patch v. Ward*, L. R., 3 Ch. App. 203; *United States v. Throckmorton*, 98 U. S. 61; *Greene v. Greene*, 2 Gray (Mass.) 361; *Curry v. Peebles*, 83 Ala. 227; *Kimberly v. Arms*, 40 Fed. Rep. 557-8; *Dringer v. Receiver*, 42 N. J. Eq. 579-80; *Stratton v. Allen*, 16 N. J. Eq. 231-2; *French v. Shotwell*, 6 Johns. Ch. R. 235.

5. The chancery court of Escambia county had authority to enter the decree in vacation, and the recitals in the decree show that the statute and rule of practice were strictly followed in its rendition.—Code of 1886, § 2593; 80*a* Rule of Chancery Practice, Code, p. 825.

6. In the absence of fraud *in its procurement*, and between parties not standing in confidential relations to each other, a judgment or decree, rendered by consent of parties, is, according to the great weight of authority, equivalent to an adjudication of all questions which were or could be put in issue in the suit, and as binding and conclusive as if the suit had been an adversary one, and the conclusions embodied in the decree had been reached by the court upon consideration of evidence introduced by the parties.—*French v. Shotwell*, 5 Johns Ch. 568; *Walsh v. Walsh*, 116 Mass. 383; *Gifford v. Thorn*, 9 N. J. Eq. (1 Stock.) 722; *Dunham v. Hartwell*, 60 Am. Dec. 177; 2 Black on Judgts., § 705; *Nashville, etc. R.Co. v. United States*, 113 U. S. 261; *Curry v. Peebles*, 83 Ala. 228; *Rogers v. Prattville Co.*, 81 Ala. 483; *Patillo v. Taylor*, 83 Ala. 233; 1 Freeman on Judgts., § 330.

GORDON MACDONALD, *contra.*—The object of the bill is to impeach a decree for fraud. It is an original bill in the nature of a bill of review. "Courts of equity have the unquestioned power to give relief against judgments or decrees which have been obtained by fraud, notwith-

[Adler *et al.* v. Van Kirk Land & Construction Co.]

standing that the suit as instituted has relation to frauds alleged to have been committed in a former suit in courts of another jurisdiction—State or National. If a decree has been obtained by fraud, it may be impeached by an original bill, sometimes called an original bill in the nature of a bill of review, without leave of the court. And where a decree has been so obtained, the court will restore the parties to their former situation whatever their rights may be."—*Stallworth v. Blum*, 50 Ala. 46 ; Story's Eq. Pleading, § 426 ; Mitford's Pleadings, Chap. 1, Part 3, § 2 ; *Tilgham v. Werk*, 39 Fed. Rep. 680 ; 2 Beach Modern Eq. Prac., 884 ; *Whittemore v. Coster*, 4 N. J. Eq. 438.

2. "A false representation by one of the parties to a contract does not put the other on inquiry as to its truth. Every contracting party has an absolute right to rely on the express statements of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement ; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith." 1 Beach Modern Eq. Prac. § 95 ; *Redgrave v. Hurd*, B.R. 20 C. Div. 1 ; *Cottrill v. Erum*, 100 Mo. 394 ; *Ledbetter v. Davis*, 121 Ind. 119 ; *Meade v. Dunn*, 32 N.Y. 275 ; *Albany City Sav. Bank v. Berdick*, 87 N. Y. 40 ; *Tilton v. Tisdale*, 48 Vt. 83 ; *Rawling v. Wickham*, 3 DeG. & J. 304 ; Bretts Lead. Cases Mod. Eq. 201.

3. The mere fact that this fraud has been carried into and merged into a consent decree can not affect the case. Such a decree can be set aside for fraud in obtaining it as well as any other, for, as said by the Supreme Court of Rhode Island in the case of *Vicent v. Mathews*, 15 R. I. 509 : "A consent decree can be set aside or reformed on the ground of fraud, because consent procured by fraud is not really consent."—2 Beach Mod. Eq. Prac., § 853.

4. And so indeed was it as to the "consent" on which the decree assailed was obtained. Falsehood, fraud and misrepresentation, so this bill avers, procured this "consent." If there would have been no fraud, there would have been no consent ; if there had been no consent, there would have been no decree. Fraud vitiated the very source of appellant's claim. The stream can rise

no higher than its source. An evil tree can not bring
forth good fruit; and if there had been no fraud in this
case there would have been no decree. To show this is
sufficient to impeach the decree.—2 Beach Mod. Eq.
Prac., 884.

BRICKELL, C. J.—On the 24th day of March, 1894,
by consent of parties, a decree was entered by the chan-
cery court of Escambia county, in vacation, upon a sub-
mission duly made by the parties under the statute and
80a Rule of Chancery Practice, for a final decree in vaca-
tion, in favor of Morris Adler against the VanKirk Land
and Construction Company, foreclosing a mortgage upon
a large body of lands, executed by that company to
Worthington, Elliott & DeBardeleben, and by them as-
signed, together with the demands thereby secured, to
said Adler. After the register, proceeding to the exe-
cution of the decree, had advertised the lands for sale,
on the 9th day of February, 1895, the Land and Con-
struction Company filed the bill in this cause, seeking to
review the proceedings had, and the decree rendered in
the foreclosure suit, and to vacate and set aside the de-
cree, and for an accounting, and, as an incident to the
main relief prayed an order temporarily restraining the
sale under the decree.

The bill is essentially a bill of review, based upon
alleged newly discovered evidence, which, it is the theory
of the bill, shows that, by false and fraudulent repre-
sentations made several months prior to the rendition of
the consent decree, upon an accounting and settlement
then had between the parties touching the demands
secured by the mortgage, the Land and Construction
Company, relying upon such representations and believ-
ing them to be true, had been induced to admit and
to bind itself to pay an amount largely in excess of
what was in fact owing by it upon those demands, which
amount, by the consent decree, the company was or-
dered to pay in redemption of the mortgage. The chan-
cellor overruled a motion interposed by the defendants,
the appellants here, to dismiss the bill for want of
equity; and that ruling is the only error assigned.

The argument in support of the motion and against
the ruling of the chancellor is, that, while in the bill it
is averred that the fraud alleged was not discovered by

[Adler *et al.* v. Van Kirk Land & Construction Co.]

the complainant until after the consent decree was entered, the bill is wholly wanting in averments showing the exercise of any diligence whatever by the complainant, its officers or agents, to ascertain the facts out of which the fraud arose, or the evidence relied upon to establish it, or that such facts or evidence, by the use of reasonable diligence, could not have been discovered, prior to the rendition of the decree, or the execution of the agreement upon which it was based.

The doctrine is now too well settled to admit of controversy, and is upheld by a sound and conservative public policy, that, to maintain a bill of review upon newly discovered evidence, the matter must not only be new, that is, ascertained or discovered after the court has passed its decree, but it must also affirmatively appear, by appropriate averments and by proof, that the party complaining, by the use of reasonable diligence, could not have, prior to the decree, ascertained or discovered it. If such matter was known to him before decree entered, and he failed to avail himself of it, or if unknown, but by the exercise of proper diligence, he could have known it, the court will not afford him relief. A wrong may have been inflicted, rather than a right enforced, by the decree; yet, according to the uniformly declared policy of the court, it is better that such wrong should go unredressed, than that the solemn decree of the court should be set aside at the suit of a party who, having had his day in court, failed, by reason of his own negligence or *laches*, to timely present the matter of his defense for adjudication. Diligence in this respect is of the essence of the equity of the bill; *laches* or negligence is as fatal to relief as the actual absence of a matter of defense. In *Young v. Keighley*, 16 Ves. 348, Lord ELDON says: "The question always is, not what the plaintiff knew, but what, using reasonable diligence, he might have known;" and this court, in *Banks v. Long*, 79 Ala. 319, speaking through Chief Justice STONE, said: "The equity of a bill of review, for newly discovered testimony, is the fact that it is newly discovered, and that, with the other testimony, it entitles the complaint to a decree different—beneficially different—from that rendered in the cause. It must be newly discovered; for, if known before the trial, or if with proper diligence it would have been known, this is a complete bar to such relief." This principle is uni-

formly recognized and upheld by the text-writers and adjudged cases.—Story's Eq. Plead., § 414; 2 Dan. Ch. Pl & Pr., (5th ed.), p. 1578; 2 Beach Mod. Eq. Pr., § 862; *Dexter v. Arnold*, 5 Mason, 312, 321; *Wiser v. Blochly*, 2 John. Ch. 488; *Traphagen v. Voorhees*, 45 N. J. Eq. 41; *Davis Co. v. Dunbar*, 9 S. E. Rep. 237; *Murrell v. Smith*, 51 Ala. 301; *Randall v. Payne*, 1 Tenn. Ch. 142. Considering a similar question, in *Waring v. Lewis*, 53 Ala. 625, the court said: "There must be an end to litigation; and without offending principles of public policy, endangering the order and peace of society, and deranging the whole structure of our judicial system, a court of equity cannot intervene against the decree or judgment of a court of competent jurisdiction, because of facts known, or capable of discovery by reasonable inquiry, at the time of its rendition. Fraudulent practices or concealments may be resorted to by an unscrupulous suitor; witnesses may be corrupted, or evidence suppressed, and an unjust, unconscientious judgment wrested from the court; these must have been unknown, and reasonable diligence not sufficient to have guarded against them; the judgment must stand, or the conservatism of the law will be violated.—Freeman on Judgments, §§ 493-506."

Turning to the bill, an examination of its averments leaves it free from doubt that it wholly fails to show that the complainant made any effort whatever, prior to the rendition of the consent decree, to ascertain for itself the true status of the accounts between it and Worthington, Elliott & DeBardeleben, secured by the mortgage, or to ascertain whether the representations made upon the settlement were true or false; nor does the bill contain any averment that shows or even tends to show that such effort, if made, would have been unavailing and fruitless. The settlement was effected in July, 1893, more than eight months before the agreement was made for the consent decree, and before that decree was entered and payment of the amount then agreed upon as due from the company to Worthington, Elliott & DeBardeleben, was extended until the 27th day of December, 1893, the company executed to them its several promissory notes in evidence of the indebtedness. Not only is this true, but it is fair to presume from the averments of the bill and the exhibits thereto, that, prior to the

settlement, the company had several months in which
to ascertain the extent of its liability upon the secured
demands. It was not until Adler was proceeding to
have his decree executed by a sale, nearly one year after
its rendition, that the company, for the first time, so far
as disclosed by the bill, took any steps to ascertain
whether the representations made upon the settlement
were true or false. So far as disclosed by the bill, it
then did what it could easily have done before ; it caused
estimates to be made of the embankment and excavation
done by Worthington, Elliott & DeBardeleben under the
contract with the Mobile & Girard Railroad Company, and
inquiries to be made as to payments made on the indorsed
note by Worthington, Elliott & DeBardeleben ; and upon
information thus and for the first time obtained, it files its
bill, seeking to have the consent decree vacated and set
aside, and the accounts between the parties reopened.
It is a clear inference from the averments of the bill that
the complainant was as fully possessed of the facilities for
prosecuting its inquiries before as it was after the con-
sent decree was entered ; that it then knew of the loca-
tion of the railroad upon which the work was done, and
of the holder and owner of the indorsed note, and its
place of business. Manifestly, such conduct constitutes
negligence or *laches* that bars relief in cases involving
the principle under consideration. However much the
court might desire to relieve against the decree, it is
powerless to grant any relief consistently with well
settled principles and a true regard to a sound and con-
servative public policy.

The only pretense of an excuse offered in the bill for
this remarkable supineness is, that the complainant, its
officers and agents, relied implicitly on the representa-
tions, which are alleged to have been made by a member
of the firm of Worthington, Elliott & DeBardeleben, be-
lieving them to be true, and not having any reason to
suspect that they were untrue. The only relation shown
by the bill to have existed between the complainant and
Worthington, Elliott & DeBardeleben is that of mort-
gagor and mortgagee. Such relation is, so far as the
question under consideration is concerned, one merely
of debtor and creditor, the creditor holding the mort-
gage as security for his debt ; this relation is not one of
a confidential character.—*Paulling v. Creagh*, 54 Ala.

657; *O'Bear Jewelry Co. v. Volfer*, 106 Ala. 205. In *Otis v. Dargan*, 53 Ala. 178, legatees sought to excuse their *laches* by asserting confidence reposed by them in the executor of the testator, in a case involving a like principle with the one under consideration; but the court held the excuse insufficient, saying: "They reposed confidence in the appellee, it is alleged; but there is no evidence that it was in any other degree than such confidence as is usually extended from one person to another in the ordinary transactions of life. The confidence, the trust, which, when abused, will invoke the aid of a court of equity is not shown to have existed except so far as it may be deduced from the relation of executor and legatee in every case."

Whether the relation of trust and confidence, if it had existed between the complainant and Worthington, Elliott & DeBardeleben would have relieved the complainant from its *laches*, it is not material here to consider; for no such relation existed between them, and the complainant, in relying with implicit confidence upon the representations made to it, did so at its peril. To admit of such an excuse would be, in effect, to destroy the principles so well established and so essential to the conservatism of the law.

It is disclosed by the bill that the decree complained of was rendered in vacation upon a submission had in vacation. The Code authorizes the rendition of final decrees at any time, whether in term time or vacation, by consent of parties or their counsel.—Code of 1886, § 3593. The bill shows that the decree was rendered by consent of parties, and the copy of the decree exhibited with the bill, shows that Rule 80a of Chancery Practice was strictly complied with. The decree was, therefore, of the same validity as if it had been rendered in term time.

It is averred in the bill that the decree in the foreclosure suit was "solely upon the consent of the parties to said cause, and that no judicial ascertainment of the facts stated in the bill filed in said cause was ever had;" and that "said consent decree does not and did not constitute an adjudication of said cause." The purpose of the pleader, in making this averment was, doubtless, to state, as a fact, that the decree was merely a consent decree, a decree agreed upon by the parties, and upon

[Adler *et al.* v. Van Kirk Land & Construction Co.]

such consent, rendered by the court, without an ascertainment of the truth of the facts averred in the bill, or of the rights of the parties therein asserted; and, as a conclusion of law flowing from these facts, that the decree does not operate an adjudication against the Land and Construction Company of the matters embraced in the *lis pendens* of the foreclosure suit; and the argument is, that the decree is not an estoppel of record against the company as to the amount by the decree declared to be owing upon the demands secured by the mortgage.

Whatever effect such a conclusion, if logically deducible from the premises stated, would have upon the rights of the parties in this cause, under the averments contained in the bill, it is not necessary to consider; and this because the conclusion is a *non sequitur*. In the absence of fraud *in its procurement*, and between parties *sui juris*, who are competent to make the consent, not standing in confidential relations to each other, a judgment or decree of a court having jurisdiction of the subject-matter, rendered by consent of parties, though without any ascertainment by the court of the truth of the facts averred, is, according to the great weight of American authority, as binding and conclusive between the parties and their privies as if the suit had been an adversary one, and the conclusions embodied in the decree had been rendered upon controverted issues of fact and a due consideration thereof by the court.—Freeman on Judgments, § 330; 2 Black on Judgments, § 705; *Gifford v. Thorn,* 9 N. J. Eq. (1 Stock.), 722; *French v. Shotwell,* 5 Johns. Ch. 568; *Walsh v. Walsh,* 116 Mass. 383; *Dunman v. Hartwell,* 60 Am. Dec. 177; *Nashville, &c. R. R. Co. v. United States,* 113 U. S. 261; *Curry v. Peebles,* 83 Ala. 228; *Rogers v. Prattville Co.,* 81 Ala. 483; *Patillo v. Taylor,* 83 Ala. 233.

The fact that the decree in the foreclosure suit was rendered by consent of parties does not, therefore, detract from its dignity, or lessen its conclusiveness, as an adjudication between the parties. Not only is such its effect, but its consent is a waiver of error, precluding a review of the decree upon appeal and, as a general rule, upon a bill of review.—*Thompson v. Maxwell,* 95 U. S. 391; *Nashville &c. R. R. Co. v. United States,* 113 U. S. 266; 2 Dan. Ch. Pl. & Pr., (5th Am. ed.), p. 1576;

36

*Dunman v. Hartwell,* 60 Am. Dec. 176; *Curry v. Peebles,* 83 Ala. 227.

As an original bill, or as an original bill in the nature of a bill of review, seeking to impeach the consent decree for fraud, it is equally without equity, for the reason that the fraud charged does not relate to the procurement of the decree, or of the consent upon which it was based, but to the accounting and settlement had between the parties in July, 1893, and to the consideration of the notes which were executed in pursuance of the accounting and settlement. If the allegations of the bill charging the fraud were all true, they would have constituted *pro tanto* a defense to any suit brought for the collection of the notes or of the debts evidenced thereby, and, therefore, any suit brought to foreclose the mortgage. As a legal question, the fraud charged was no more than any other defense the complainant might have had to the foreclosure suit; and to allow relief to be granted in this case upon such allegations, would open the doors of a court of equity to every defendant who has, by negligent failure to interpose his defense, suffered an unjust judgment or decree to be rendered against him. As we have seen, this would be contrary to the well settled rules of that court. To give equity to such a bill it must be clearly shown that the decree, or the consent upon which it was based, was procured by fraud; that the fraud was practiced in the act of obtaining the decree or the consent therefor. The principle is too well settled to admit of controversy. In *Stratton v. Allen,* 16 N. J. Eq. 231, the chancellor says: "It seems to be conclusively settled, that a judgment can only be impeached in a court of equity for fraud in its concoction;" and in *United States v. Throckmorton,* 98 U. S. 61, it is said: "The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral to the matter tried by the first court, *and not a fraud in the matter on which the decree was rendered.*" The principle is thus clearly expressed by Mr. Freeman in his work on Judgments, section 489: "It must be borne in mind that it is not fraud *in the cause of action,* but fraud *in its management,* which entitles a party to relief. The fraud for which a

judgment may be vacated or enjoined in equity must be *in the procurement of judgment.* If the cause of action is vitiated by fraud, this is a defense which must be interposed, and unless its interposition is prevented by fraud, it can not be asserted against the judgment; for judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties." The principle has been frequently declared by this court.— *Watts v. Frazer,* 80 Ala. 188; *Humphreys v. Burleson,* 72 Ala. 1; *Noble v. Moses,* 74 Ala. 604; *Cromelin v. McCauley,* 67 Ala. 542; *Curry v. Peebles,* 83 Ala. 227.

In any aspect in which the bill may be considered, it is without equity, and the chancellor should have sustained appellant's motion and dismissed the bill.

The statute under which this appeal is taken provides that "if the decree of the chancellor be reversed, the court shall render such decree as should have been rendered by the chancellor." It is, therefore, mandatory upon this court, to render a decree, reversing the decree of the chancellor and dismissing the bill for want of equity.

Reversed and rendered.